MilligAN, J.,
delivered the opinion of the court:
This is an action brought to recover tbe net proceeds of twenty-four bales of upland cotton, alleged to have been the joint property of tbe claimants when it was seized by the military forces of the United States.
*272 The facts as found by the court are as follows-:
1. Both claimants are aliens — subjects of the kingdom of Spain.
2. The claimant, Iiamon Molina, in December, 18G4, was the owner of twenty-four bales of upland cotton, which was then stored at the cellar of his store, under the Scriven House, in the city of Savannah.
3. The cotton thus stored, on the 25th of February, 1805, was seized by the United States military forces, under the orders of Colonel Bausom, United States quartermaster, charged with the duty of collecting captured and abandoned property, and shipped to New York, and there sold, and the net proceeds, amounting to $4,207 92, paid into the Treasury.
4. The claimants never gave any aid or comfort to the late rebellion, and throughout the war maintained a course of strict neutrality between tlje two belligerent parties.
5. The proof of the laws of Spain authorizing a citizen of the United States to sue the Spanish government for claims against that government rests in the testimony of one witness, Mr. Francisco Fessor, who proves that he is a Spanish citizen and subject, and that he was educated to the profession of the law in Cuba, and practiced his profession in Havana for ten years, and that the laws of the island of Cuba are the same as the laws of Spain in all essential points, except local usages and institutions, such as slavery.
6. In respect to the Spanish law, it appears that the right of an alien and of a Spanish subject to appear before the courts of law, ■ generally, and bring on all manner of actions, whether against the government, or against all other persons and corporations, is precisely the same. The law makes no distinction between aliens and subjects; all alike have the right to claim against the action of the government, and to procure redress from the special courts appointed for the purpose, and by special rules of procedure, whenever the action of the government or of any of its officers is claimed, or pretended to be, in violation of written law, or in violation of contracts entered into by the government;-or when questions arise concerning the interpretation, validity, or annulling of those contracts; or, in fact, in any other question in which established or acquired rights or property are injured.
7. There is no unwritten or common law in Spain; the stat-' *273 ute or written law is the only one admitted with force. Tlie right of aliens or citizens to sue the government is derived from the principle of law that whatever is not forbidden is lawful ,* and as there is no law which forbids a foreigner or a native to come forward and sue the government, he is admitted with that right, and has .been by traditional practice of centuries. There is no known period from which that right dates its origin. It is coeval with the establishment of jurisprudence in Spain, because it is a maxim of civil law from which Spain’s law is derived.
8. As to the tribunals in which actions are brought against the government, it appears that in Spain these suits against the government are brought before the bodies called the “Provincials’ councils,” which, besides exercising certain governmental functions, have also a judicial capacity for that peculiar description of suits.
An appeal may be taken from all these councils, or from the primary court, to the “ Council of State of the Nation.” The form of procedure is similar in its principles to that which is in force in the ordinary courts of law, only that the terms and delays are briefer, more rapid, and the forms of law simpler. In this class of suits, where the government is the defendant, it is designated uMscus, State or Government.” uMseus ” properly means the treasury, the department of the government which collects and pays and receives money. But as all suits against the government may be defined to be a claim for money, or for a pecuniary indemnity, almost all these claims are said to be made against the “Fiscns.” These courts which have been mentioned as having jurisdiction to try actions against the government, on behalf of aliens as well as citizens, render a judicial judgment. Until the establishment of these special tribunals to take cognizance against the government, which date only from the beginning of this century, it was lawful to sue the government in the ordinary courts, to obtain judgment, and to carry out the execution of such judgments, even to the extreme of attaching and selling the property of the government. When this mode of procedure under these special tribunals was established, the courts were forbidden to issue writs of execution against the government, the mode of satisfaction being to apply with a copy of the judgment' before the government, and have the claim, or whatever the amount awarded by *274 tbe court is, inserted iu the budget, which at once gives authority to the corresponding’ treasurer or paymaster, to make the payment. The judgment rendered by the court is conclusive of the right, and no further legislation is required to establish it. • These judgments are paid, as a matter of course, by the government, only sometimes there arises some difficulty in consequence of the penury of the treasury. There is no dispute about it; there is supposed to be none in law. There has never existed in Spain any difference between the right of an alien and a citizen to sue the government.
On the foregoing facts found in the record, we find as an ultimate fact that the government of' Spain accords to citizens of the United States the right to prosecute claims in its courts against that government, as fully as they are allowed by law to prosecute them against the government of the United States.
In the attitude of this case, there are only two questions of any importance presented for our decision: 1. The variance between the petition and the proof as to the ownership of the cotton sued for; and, 2. - The right of the claimants to maintain this action under the second section of the Act 2,7th July, 1868.
1. As to the first question, it may be remarked that in the petition it is averred that the cotton, 'jvhich is the foundation of this action, was jointly owned by the claimants at the date of the capture$ and the proof shows that the title was vested, in Eamon Molina alone, and his co-claimant, Francis E. Molina, had no interest whatever in it. The Act 12th March, 1863, under which this suit was brought, among other things, requires every claimant to prove to the satisfaction of the court his ownership of the property claimed, and his right to the proceeds. The averment of these essential facts must, if traversed at all, be traversed in the manner and form in which they are pleaded, and a failure to support the affirmative of the issue thus presented is as fatal at the common law as if no proof had been offered to sustain it. (Stevens on Pleading, 85, margin.)
But the rigor of this rule has been to a great extent obviated by statute both in England and the United States. The British statute 3 and 4 Will. IY,c. 42, §23, was avowedly passed to rescue the administration of justice in England from the disgrace into which it had fallen from a strict adherence to unsubstantial forms and useless technicalities, by enabling the courts to grant amendments in all particulars which, in the judgment of the *275 court, is not material to the merits of the case, and by which the opposite party cannot be prejudiced in the conduct of his action.
The United States, animated by the same spirit, as early as September 24,1789, provided “ that no summons, wilt, declaration, return, process, judgment, or other proceedings in civil causes in any of the courts of the United States shall be abated, arrested, quashed, or reversed for any defect or want of form, but the said courts respectively shall proceed and give judgment according as the right of the cause and matter in law shall appear unto them, without regarding any imperfections, defects, or want of form in such writ, declaration, or other pleading, return, process, judgment, or cause of proceeding whatsoever, except those only in cases of demurrer, which the party demurring shall specially set down and express, together with his demurrer, as the cause thereof. And the said courts respectively shall and may, by virtue of this act, from time to time amend all and every such imperfections, defects, and wants of form, other than those only which the party demurring shall express as aforesaid, and may at any time permit either of the 'parties to amend any defect in the process or pleadings, upon such conditions as the said courts respectively shall in their discretion and by their rules prescribe.” (Act 1789, § 32,1 Stat. L., 91.)
The power of the courts of the United States under the broad and enlightened provisions of this section of the judiciary act is ample to enable them to meet and remove by amendment, “ at any time,” all defects or wants of form in the summons, writ, declaration, &c., which stand in the way of such court to give “judgment according as the right of the cause and matter in law shall appear.” The whole matter rests in the sound discretion of the court, unless that discretion is restrained by rule of court, prescribed for its own action in cases of amendment. This court has not limited its power in this respect by rule, except in case of special demurrers, and in that case the rule is in furtherance of the general policy of the statute.
A variance such as the one under consideration is matter of form, and does not go to the merits of the case. Scull v. Briddle, (2 Wash. C. C. Reports, 201;) Smith v. Jackson, (1 Paine’s C. C. Reports, 486, and 7 Peters’ R., 634.) And the rule in such case, *276 ms ]aid clown by tbe Supreme Court in tbe case of Randolph v. Barrett, (16 Peters’ R., 138,) is to grant amendments where there is anything found in the record to amend by. In this case the net proceeds of the cotton sued for are held by the government, as a trustee, for the rightful-owner, who can bring himself within the provisions of the Act March 12th, 1863, under which this action is prosecuted. The action is brought in the name of Francis B. and Bamon Molina, and the United States defend it, not on the ground that they do not hold the proceeds of the cotton in trust for the joint use of the claimants, but because, as they insist, neither the one nor the other, nor both of the claimants, have brought themselves within the provisions of the statute. Had the action been brought in the name of Bamon Molina alone, in whom the title to the cotton is shown to have been vested when it was captured, the defence to that action could not have been more successful or otherwise than the defence now made to the joint action of both claimants. No wrong or injury, therefore, can result to the United States by allowing the petition af this time to be amended so that¡the merits of the case may be reached; and we direct that the action be dismissed as to Francis E. Molina, and proceed to final judgment in the name of Bamon Molina alone.
2. This question, which is preliminary to the second proposition, out of the way, we are brought to the consideration of the claimant’s right to maintain this action under the second section of the Act 21th July, 1868.
This act is a flat bar to the suit of all aliens in this court who do not bring themselves within the proviso contained in the second section, which is in the words following:
“ That this section shall not be construed so as to deprive aliens who are citizens or subjects of any government which accords to citizens of tbe United States the right to prosecute claims against such government in its courts, of the privilege of prosecuting claims against the United States in the Court of Claims, as now provided by law.”
The interpretation of this provision of the statute given by this court in the case of James Mayer de Rothschild et al. v. The United States, (ante p. 204,) is equally applicable to this case, and need not be here again repeated.
Passing by the act of 1868, without further comment, we are brought to the consideration of the Spanish law, as proven in *277 tbe record. It appears in tbe facts found by tbe court that tbe authority to sue tbe government of Spain rests on immemorial custom or “practice.” It is derived from no written law, but springs from tbe absence of all written law forbidding tbe right, which is equally open to citizens and aliens, and may be exercised in all matters of contract, violations of written law, or in any other case in which established or acquired rights or property are injured.
' The law as thus proven is unquestionably broad enough to bring this case within the act of 1868;, and we need, therefore, consider only the sufficiency of the proof to establish it.
The general principle governing the proof of foreign law is, that the best testimony or proof shall be produced which the nature of the thing admits of; or, in other words, that no testimony shall be received which presupposes better testimony behind, and attainable by the party who offers it. The written foreign law may be proved by a copy of the law, properly authenticated. The unwritten must be proven by the parol testimony of experts. But in both cases the law must be verified by an oath, or, if written, by an exemplification of a copy under the great seal of state, or by a co£>y proved to be a true copy by a witness who has examined and compared it with the original; or by a certificate of an officer, properly authorized bylaw to give the copy, which certificate must be duly proved; or, as the Supreme Court has held, by statutes received by this government from foreign governments under authority of law, authorizing reciprocal interchange of statutes, &c. Ennis v. Smith et al., (14 Howard, 401; 1 Greenleaf’s Ev., § 488; Story’s Conflict of Laws, § 641, a, and note.
The law in question being unwritten, or rather a custom of immemorial usage in Spain, must of necessity, as well as on authority, be proven by parol evidence; and the witness who testifies to the right of a citizen of the United States to sue the government of Spain, having shown himself instructed in the laws, customs, and usages of Spain, and by actual experience and practice of his profession for many years in the Island of Cuba, which is governed by the Spanish law, we feel fully authorized in holding that the Spanish law, in respect to the right of citizens of this government to sue that for claims against it, is sufficiently proven.
It is true, only one witness is called to prove the Spanish *278 law, but be is shown to be skilfully conversant by long practice with it, and adds the sanction of an oath to its verity, which seems to answer the demands of the law, and, therefore, we hold it sufficient. (1 Greenleaf’s Ev’., § 488.)
No other question of contest being found in the record, we' hold the claimant, Bamon Molina, entitled to recover the net proceeds of twenty-four bales of upland cotton, which we find to be $4,207 92, and for which judgment will be entered.
Nott, J., dissented as to the action of the court in dismissing the petition of Francis Molina, but concurred as to the power and duty of the court in allowing the amendment in favor of Bamon Molina, and upon the merits of the case.