Uott, J.,
delivered the opinion of the court:
D must be borne in mind in all proceedings under the Abandoned or captured property Act that an action under that statute is a suit in equity against a specific fund partaking largely of the nature of a proceeding in rem. In an ordinary action A B brings his suit against O D, and seeks to hold him to a personal liability. In these captured property cases the suit is in effect an information against a fund which is in the possession of the defendants as trustees for whom it may concern. Whenever the fund vanishes, the liability of the defendants under this statute ceases and our jurisdiction ends.
Hence the statute, to the end that all parties interested in the fund might assert their rights while it was still under the control of the only tribunal having jurisdiction over it, provided a fixed jurisdictional period within which all suits might be brought. The purpose of the statute was not that of a statute of limitations, to prevent the mischiefs of unreasonable delay, but arose from the absolute necessity of having all claimants irpon the fund before the court at one time, so far as to enable adverse parties seeking the proceeds of the same property to interplead and contest their conflicting rights. Hence this limitation of the statute is jurisdictional, and jurisdiction depends in every instance upon two things: 1st. Upon there being a fund or thing to which jurisdiction can attach; 2d. Upon the proceeding, information, or suit against that fund or thing being instituted within the statutory time.
*278 This suit now before us, according to the averments of the original petition, was brought for the proceeds of certain captured cotton, which was described in no other way than as 112 bales of cotton, at the time of seizure the claimant’s property, in her possession at her residence on Toketa Lake, in Mississippi. The proofs show that there was no such property, but that there was a similar quantity of cotton, the property of her husband, in his possession at his residence on Toketa Lake, in Mississippi. Failing to make good her title to any cotton whatever, the husband’s administrator, with the consent of the claimant’s representative, the two administrators being in fact one and the same person, comes in and asks to be substituted as claimant, to the end that he may change by amendment the allegations of the petition and recover the proceeds of the husband’s property.
In numerous cases under the Abandoned or captured property Act such changes of party have been allowed after the jurisdictional period for bringing such suits has expired, but in all of them the thing in suit was not misdescribed in the original petition, and the party substituted possessed some legal relations concerning the thing in suit with the party who in due time instituted the aótion. In other words, the original error was in the party’s deduction of law and hot in his averment of fact. The suits were brought concerning property sufficiently defined, and transactions by which title to that defined property was acquired or transmitted were intelligibly set forth, and a false inference of the law was then drawn, such as that the well-described title had, by the defined transaction, vested in the heir instead of in the administrator, in the wife instead of in the husband, in the bankrupt instead of in the assignee. In none of those cases could the Government, as trustee of the thing in suit* nor could a third person as adverse claimant, be deceived. The petition, regarded as a notice of lis pendens, was complete, and informed the trustee and all the world that a suit had been brought within the proper jurisdictional period to recover that specific thing. When the error was discovered, the only changes necessary were technical and formal — that the wife who bought the’personal property go out and her husband, who took title by her transaction, come in; that the dis-tributee who claimed this part of the intestate’s estate give *279 place to the administrator, who in law alone could represent it, &c.
In all of those cases, as has been said, the thing in suit was defined, and some legal relations concerning it subsisted between the party who brought the action and the party who alone could obtain a judgment.
In the case now before us the misfortune is that there is no specific title to the property set up; that there are no aver-ments in the original petition which define the thing in suit, except as being cotton, the property of the claimant; and that no legal relations concerning the thing described existed between her and her husband at the time of capture; for by the law of Mississippi she was, concerning her own personal property, to all intents and purposes a femme sole. It would, in short, have been legally feasible for her to have maintained one suit for the proceeds of 112 bales of cotton captured in Mississippi, and for her husband to have maintained another for 112 bales of cotton captured in Mississippi by a precisely similar description — that is, by no description save that of possession and ownership — and for the two suits to have proceeded' to judgment without its becoming apparent that the two sought to recover the same .thing. For her possession was not the husband’s possession's at common law, and in the eye of the law of their domicile they were strangers to each other concerning this personal property, and might have brought adverse suits concerning it, and have set up adverse titles to the proceeds as effectually as though they were not husband and wife. (Mrs. Sykes’s Case, 8 C. Cls. R., 330.)
The objections, therefore, to allowing an amendment and substitution in this case are twofold : First, that the claimant in her petition as a matter of fact, apart from all legal and technical errors, really set up a false title; second, that the substitution is to be allowed in favor of one who neglected to assert his own title and against whom she might have maintained an action of replevin if her petition were true and he had possessed himself of this property. What is this but allowing one who neglected to allege his title to his property within the jurisdictional period when he might have done so to come in when the j urisdictional period has passed and assert it now ? What is it but bringing in at once both a new party and a new claim ?
*280 Assuredly nothing. And if the application stopped here there would not be the slightest, ground for it to stand upon. But it remains to be noted that when the claimant brought her own suit, in her own name, for her own property, setting up' her own title, she was in fact the executor of her husband, who had died subsequent to capture but before suit brought, and. consequently was the only person authorized by law to assert his title. Properly speaking, the administrator de bonis non of the husband’s estate is successor of the claimant as executrix of the same estate. The case, therefore, is precisely as if she were still living and had now come in and asked to amend so as to sue as executrix instead of in her own right, and to set up her testator’s title instead of her own. An equity, though, without legal efficacy, is added to the case by the fact that as legatee she would be the part owner of the property in her own right when the estate should be closed. Will these additional facts afford jurisdiction to allow the change and substitution asked for ? I am inclined to think not. The trouble still remains that on the 20th August, 1808, when the jurisdictional period ended, there was no claim before the court to which jurisdiction could attach irrespective of the party or person who preferred it. If the executrix had set up the true title; if' she had specifically described the propefby captured; that is, if she had sued for the thing now sought to be sued for, her misnomer in suing in her own right could have been cured by amendment. But the thing sued for was as distinct in contemplation of law from the thing now sought to be sued for as it would be if she had come in and sought to amend by substituting for cotton captured in her possession at her residence in Mississippi cotton captured in her brother’s possession at his-residence in Alabama. It is true that there are no formal or technical pleadings required in this court, but, as was said by the Supreme Court in Baird’s Case, (8 C. Cls. R., 13,) the allegations and proofs must so far correspond as to maintain the principle of res judicata.
Therefore, we are of the opinion that the court, for want of' jurisdiction, must refuse to hear the motion upon its merits, and the claimant be left to apply to the Supreme Court for a mandamus to correct the error, if error it be. If the case could, be considered on the merits, wé should have little doubt that the error arose from a woman’s blunder in half stating her case *281 to her lawyer; but, for the reasons given, the merits cannot be inquired into.
The order of the court is that the motion to substitute the administrator de bonis non of the estate of John H. Thomas, deceased, be not heard on the merits, but be dismissed for want of jurisdiction in the court to entertain it.
Loríng and Peck, JJ., dissented.