Eichaedson, J.,
delivered the opinion of the court:
This is a motion on the part of the claimant to so amend the petition as to make it conform in its allegations to the exact facts as they existed at the time of the institution of the action and as they have been proved before the court, correcting certain errors made by the counsel employed to commence the suit, through an imperfect knowledge of the case.
We shall make the merits of the motion plainer if we briefly state the present attitude of the parties and the present position of the pleadings, as the record now stands.
In the year 1863, John II. Thomas, a citizen and resident of Mississippi, owned a plantation in Yazoo County, in that State, upon which he resided with his family, and where he raised a large quantity of cotton. In June or July of that year, he OAvned and had in his possession on his plantation 112 bales of cotton, which were then and there seized by officers of the United States, intermingled with many lots seized from other parties in like manner, and taken to Vicksburg. So much of the whole as was not lost or destroyed was sold, and the proceeds Avere into the public Treasury.
Mr. Thomas died about the 20th of May, 1865, leaA’ing a will, by which he gave one-third of his estate, upon conditions, to his niece, and the remainder, both real and personal, to his wife, Mary W. Thomas, who, on the probate of the will in the probate court of Yazoo County, avÚs duly appointed sole executrix on the 24th of October, 1865, accepted the trust, gave bond, and continued to act as executrix until her death, March 30, 1874.
On the 10th of August, 1868, Mary W. Thomas gave a written power of attorney, executed and acknowledged in Mississippi, to 13. D. Whitney and Harris & Harris, for her and in her name “to collect from the Treasury Department of the United *339 States, or from any agent or officer of the Government' of the United States, all sums of money due or coming to her for cotton taken by officers or agents of the United States, and to from time to time furnish, any further evidence necessary or that may be demanded to establish sufficient proof of her loss of said cotton so taken as aforesaid, and all other matters necessary to establish her said claim in the Court of Claims.”
Three days afterward, Mr. Whitney, in the city of Washington, drew up, signed, and swore to the original, petition in this case, instituting the action in the name of Mary W. Thomas, without styling her executrix of the will of John H. Thomas, deceased, and alleging that'“in the month of July, 1863, she was the owner and in possession of 112 bales of cotton at her residence on her plantation on Poketa Lake, seven miles from Yazoo City, in said county ” of Yazoo. Six days later, on the last day allowed for filing petitions finder the abandoned and captured property act, Mr. Whitney filed the petition in this court.
We have no doubt that all the errors now sought to be corrected arose in good faith from inadvertence of counsel by reason of the want of a knowledge of the facts in the case and the difficulty of obtaining information from his client in due season.
Such was the conclusion of the court on the former hearing, when it said: “ If the case could be considered on its merits, we should have little doubt that the error arose from a woman’s blunder in half stating her case to her lawyer.” The Chief Justice and other judges concurred in that view.
It is easy to understand how the widow of John H. Thomas, the sole executrix of his will, and the principal legatee and devi-see of his estate, should have referred to tbe cotton as hers and on her plantation, and how she should have neglected to instruct her counsel as to the fiduciary capacity in which she was acting, and as to the technical legal title to the cotton at the time of its seizure j and it is equally easy to understand how Mr. Whitney fell into an error as to the title, situated, as he was, more than a thousand miles from his client, and having only a few days remaining in which to hurry to commence the action. The petition was inartistically drawn, and the manuscript itself bears internal evidence of having been written in great haste and with little care and attention. While the first part of the petition describes Mary W. Thomas and refers to “her” and *340 ■“hers,” tbe last part uses tbe pronouns “be,” “him,” and “his,” in reference to tbe claimant.
Besides, tbe attorney for Mrs. Thomas, who drew the petition, Mr. Whitney, has made affidavit that “this error in tbe case arose from tbe misapprehension and mistake of counsel in 'this case, arising, as be believes, from Mrs. Thomas being an aged and infirm lady, living in a remote place, having but little business knowledge or capacity, so as to enable her to correspond intelligently with her attorney and counsel.”
In 1873 this case and a large number of others, all brought to recover - tbe proceeds of different interests in intermingled cotton, were referred to a commissioner of this court. (10 C. Cls. R., 502; 92 U. S., 651; 11 C. Cls. R., 477.) In 1875 tbe commissioner made a report-, in which be found tbe quantity of intermingled cotton seized and sold, the amount of the proceeds, and tbe interests and shares of the respective owners and claimants of the funds.
In this case be reported tbe 112 bales of cotton to havebeen,,at the time of seizure, tbe property of John II. Thomas, deceased, and “ that tbe estate of said deceased is entitled to recover at tbe rate of $177.55 per bale,” in all, $19,885.60.
Thus it was through tbe commissioner’s report that tbe error In tbe petition as to tbe legal title to tbe cotton in question at the time of its seizure and tbe representative capacity of tbe claimant first became known and appeared upon tbe record. Tbe order of reference provided that tbe cases referred should be brought to a bearing by motion to confirm the report, and that they should be beard upon exceptions filed by tbe parties. This case cam eto a-hearing April 26,1875, and no exceptions to tbe report in this matter were filed or taken by the defendants. On tbe 24th of May, 1875, an order was made confirming tbe report and directing judgment for' the claimant in this case among others, but tbe entry of judgment has been ever since suspended. (10 C. Cls. R., 518.) Tbe commissioner’s fees were assessed upon tbe claimants in whose favor judgments were recovered, according to tbe order of tbe court, in proportion to tbe amount ■of tbeir respective claims; and on tbe 31st of May, 1875, the «claimant’s counsel paid tbe sum of $137.92 as the claimant’s proportion in this case.
Tbe administrator of tbe estate of Mary W. Thomas, deceased, has been admitted to prosecute-the action, and has made tbe *341 motion now under consideration to amend tlie petition so as to state ber case as it should have been stated in the first place* with the purpose, no doubt, of laying the foundation for the administrator de bonis non of the estate of her husband, John H. Thomas, to appear and be substituted as the claimant to prosecute the case to final judgment.
Thus it is apparent that, should the present motion be granted, and should it be followed by a motion to substitute as plaintiff the administrator.de bonis non of John II. Thomas, and should that motion also be granted, the pleadings will then set up: 1st. A demand to recover the proceeds of the identical 112 bales of cotton which were described in the original petition in this suit, and the seizure of which was therein set forth. 2d. Au assertion of title and right of recovery at the time of the seizure in the identical person described in the petition as the owner-at that time.
The petition as it now stands, and the petition as it will stand if amended, will be substantially alike as to the property claimed and as to the party claiming it at the time of the commencement of the suit.
There -will, however, be a difference upon one point, between the original petition and the amended petition. So far as the facts are now developed, the owner of the property at the time of the seizure is not correctly described in the original petition. The proof shows that it was owned by John H. Thomas at the-time of the seizure, and by Mary W. Thomas as his executrix at the time of the commencement of the suit. It is urged that a change in the allegation in this respect will introduce a new-cause of action in favor of a new party, and that the court should therefore pause before allowing it.
The present motion has great equities. At the time the action was brought, Mary W. Thomas was the only person entitled, or who ever had been entitled, to institute proceedings in this court for the recovery of the proceeds of the cotton. Her husband had died before the suppression of the rebellion, and so never had a right to come into this court, according to the decision in Tibbett's Case (1 C. Cls. R., 169). Mary W. Thomas, was his widow, principal legatee, and sole executrix-. Unskilled in the forms and requirements of law, she neglected to state her case correctly to her counsel; and her counsel erred in not, drawing her petition so as to describe her as executrix, and so. *342 as to allege that the cotton at the time of seizure was the property of her testator. We have shown, and we And, that the cotton, the proceeds of which are now sought to bo recovered, is the same as that referred to in the original petition, and that no new cause of action is now sot up by the amendment. It appears, also, that the defendants have not been misled or injured by the mistakes of counsel and of his client; that all the other claimants to this intermingled cotton fund have had judgment for their proportions, and that the balance which arose from the cotton of John H. Thomas now awaits the decision of this case for its final disposition. There is no other claimant to it.
There are no persons directly interested in this property who are unrepresented here, and therefore no such interests can be imperiled. The representative of the husband is here seeking to come in. The representative of the wife is in possession of the suit, and consenting to the change. Her next of kin cannot appear here either to further or prevent the granting of this motion. Any suggestion touching them may, therefore, be dismissed without further notice.
The main question is whether there is any inflexible rule of law forbidding us to do equity by granting the motion. The power of the court in this respect is to be gathered in part from the statute, and in part from the decisions of other courts of law. In resorting to the latter sources of authority, wo must remember that the Court of Claims is not a mere common-law court, and is not restrained by narrow rules of technical pleading. It is a court of limited jurisdiction, but of broad powers within' the scope of its jurisdiction, created in order to enable honest claimants to reach the Treasury; and it is not allowed to interpose purely technical barriers between them and the payment of just claims. The Supreme Court has held that “the Court of Claims, in deciding upon the rights of claimants, is not bound by any special rules of pleading.” (Burns’s Case, 12 Wall., 246.)
In Padelford's Case (9 Wall., 531; C. Cls. R., 144), the Chief Justice, in delivering the opinion of the Supreme Court, said:
“The captured and abandoned property act of March, 12, 1863, under which the claim in this case was made, has been frequently under the consideration of the court. In the several cases decided during the term * * * it has been held to be remedial in its nature, requiring such a liberal construction as will give effect to the beneficent intention of Congress.”
*343 By tbe Revised Statutes it is provided:
“Sec. 954. No summons, writ, declaration, return, process, judgment, or other proceedings in civil causes in any .court of the United States shall be abated, arrested, quashed, or reversed for any defect or want of form; but such court shall proceed and give judgment according as the right of the cause and matter in law shall appear to it, without regarding any such defect or want of form, except, &c.; and such court shall amend every such defect and want of form, &o.; and may at any time permit either of the parties to amend any defect in the process or pleadings upon such conditions as it shall in its discretion and by its rules prescribe.”
■ If, therefore, the proposed amendments relate only to defects and want of form, the court is bound to allow them. The statute is peremptory and leaves nothing to discretion, but expressly requires the court to amend every such defect or want of form. All other amendments are left, by the last part of the section, entirely to the judgment and discretion of the court.
Like authority is conferred by statutes upon the courts of the several States and of England; and everywhere the discretion is exercised with great liberality in the allowance of amendments for the furtherance of justice. When errors in the pleadings, either of form or substance, have not misled the opposite party, and can be corrected without doing manifest injustice and injury to any one, motions to amend the proceedings so as to fairly and correctly present the real controversy between the parties are always allowed.
The court will adopt a liberal course in allowing such amendments as are designed to present the case as both parties might reasonably be held to have understood it, from the proceedings which brought them into court, however imperfectly and incorrectly expressed, through mere inadvertence. It will refuse amendments only when they propose to introduce new parties not in privity of interest with’ those who instituted the proceedings ; or to introduce an entirely new cause of action; or when offered in an action to enforce a penalty, in which the complainant is granted little indulgence; or where the opposite party has been misled; or where the allowance of the amendment would give one party an unfair advantage over the other.
Long after the restraining rules of the common law were adopted, and when, perhaps, they were more rigidly enforced than they are now, the precise question which we are to pass upon *344 came before courts in England and in this country. They had to decide, as we have to decide, whether a change in the .character in which the plaintiff sues, as, for instance, from individual to representative capacity, or the reverse, necessarily works such a change in the subject-matter of the suit as to make it imperative upon a court to disallow it, even if the refusal will permit the intervention of the statute of limitations as a bar to recovery by the real party in interest.
It is said in Tidd’s Practice (vol. 2, 9th ed., 698) that—
“Where the plaintiffs declared as executors on a promise to their testator and issue was joined on a plea of the statute of limitations, the court of King’s Bench, after two terms, permitted the plaintiffs to amend by laying the promise to have been made to themselves. But the amendment in this case was under particular circumstances; and if it had not been allowed, the action would have been lost by the running of the statute of limitations.”
Carne & Vivyan v. Malins et al. (6 Eng. L. & E., 568) is a case directly in point. A firm carried on business as A, B & C. At the time of an alleged debt being contracted, B and 0 were surviving, and an action was commenced in their names. It was then discovered that at the time of the debt was contracted eight other persons Avere beneficially interested in the firm. The Court of Exchequer alloAved the writ and other proceedings to be amended by adding the names of these persons, in order to avoid the effect of the statute of limitations. Baron Parke, in rendering the judgment of the court, said:
“The court, having considered the authorities on the subject, and the serious consequences which would follow to the plaintiffs if the application were refused, are of opinion that the amendment should be allowed.”
Nor is this liberality and sense of justice in the English courts confined to amendments in describing the plaintiff. In another ease in the same court, a plaintiff who had suffered a nonsuit in an action against a firm on the ground that twro of the defendants were not members of the firm at the time of the accruing of the cause, was permitted to have the nonsuit set aside and to amend his declaration by striking out the two defendants erroneously included in the action, in order to prevent the operation of the statute of limitations. (Crawford v. Cocks et al., 3 Eng. L. & E., 594.)
The American courts have either led or folloAved the liberal course of the English courts.
*345 In the case of Tiernan's Executor v. Woodruff (5 McLean, 135), tbe court, “from a careful and laborious consideration'of the cases, both in England and this country,” held that an amendment may be allowed introductory even of a new cause of action “ especially where such cause is outlawed by the statute.” And this case is cited and approved by the Supreme Court in Tilton v. Cofield (93 U. S., 166).
In Alabama it is held that it is no inadmissible departure from the summons to amend the complaint so as to show the capacity in which the plaintiff sues. Although the summons may be in favor of the plaintiff as an individual, it is permissible for him on general process to declare as. an administrator. (Crimm v. Crawford, 29 Ala., 623.)
In Connecticut a writ of attachment in favor of A and B, and D (as the executor of C), on a note payable to A, B, and C, was served on the real estate of the maker of the note after the death of C. After the return of the writ it was amended by erasing the name of D, leaving the action to proceed in the names of A and B, as survivors. It was held that the amendment was allowable, and that the lien created by the attachment was not thereby dissolved. (Johnson v. Huntington, 13 Conn., 47.)
In Maine an action of trespass gu. el. was brought charging-the defendant with injury to the plaintiffs’ property. The court allowed them to amend by setting forth that they sued as deacons and overseers of a Society of Shakers. (Anderson v. Brock, 3 Greenl., 243.)
The Supreme Court of Massachusetts held that it has power, independently of statute, to allow the name of a co-defendant, who was not liable, to be struck out of a writ in an action on contract. (Fitch v. Stevens, 2 Met., 505.) In a later case the same court held that it was within its discretion, after a verdict for the demandants in a real action, to allow an amendment by striking out the name of one of the demandants who with her husband, is named as claiming a share of the premises in her right, but who, in fact, died before the date of the writ, and by inserting a claim by the husband to hold her share as tenant by the curtesy. (Emery v. Osgood, 1 Allen, 244.)
In Texas it has been held that where one administering on an estate has brought suit in his individual capacity, he may by amendment make himself a party plaintiff in his represent- *346 alive character, if the estate he represents has an interest in the recovery sought. (Smith v. Anderson, 39 Tex., 496.)
And in Illinois, in a suit by an administrator on a policy of insurance, an amendment was allowed whereby the administrator was dismissed from the action, and the widow and heirs of the assured substituted as plaintiffs, where they were the proper parties to sue. (Teutonic Life Insurance Co. v. Mueller, 77 Ill., 22.)
The practice in Louisiana conforms to that in the other States and in England. Tlius where a party instituted a suit as tutrix or guardian of minor children, for a debt, she was allowed to amend and to carry on her suit as administratrix of her husband, Avho was dead. The court said that as administratrix she was in a capacity to claim the entire debt for the benefit of the minors as well as the creditors, and the amendment did not alter the nature of the demand. (Womack v. Womack, 2 Ann., 339; Richardson v. Fenner, 10 Ann., 600; Jilks v. Smith, 5 Ann., 674.) The case of Duncan v. Helm (21 Ann., 304) does not conflict with these authorities. On close examination it will be found to have no application to a case like this. .
These authorities might be multiplied indefinitely. Some of them are founded upon statutes and some upon general rules of common law. All recognize the propriety of granting such an amendment as is now sought for, when it is necessary to the futherance of justice. One and all show conclusively that the substitution of a plaintiff in a representative character for himself individually is not regarded by courts of the highest authority as a substantial change either in the parties to or the subject-matter of the action. For if it be an inflexible rule that no amendment will be allowed which does effect such changes, it must inevitably follow that the amendments which have been allowed do not, in the opinion of the courts which allowed them, effect such changes.
It only remains to inquire whether there is anything in the captured and abandoned property act, or in the nature of the proceedings authorized by it, which precludes the court from giving the benefit of these just and equitable rules to suitors in those proceedings. In the hearing on the former motions (12 C. Cls. R., 273) the majority of the court met with a jurisdictional bar which they felt themselves unable to surmount, in the clause which provides that “ any person claiming to have *347 been the owner of any such abandoned or captured property naay at any time within tico years after the stvpjpression of the rebellion prefer bis claim to the proceeds thereof in the Court of Claims.”
The opinion of the majority then rested solely upon that proposition. The whole argument against granting the motion is founded upon it. If there is nothing in it, there is no reason why we should not yield to the whole current of authority.
"We hare given this proposition careful examination and diligent inquiry. The conclusion which we reach is this:
The bar of an ordinary statute of limitations practically differs from the bar in force in this court only in this: that in the former the court is dispossessed of its jurisdiction to remedy the plaintiffs wrong only by the act of the defendant in pleading the statute; in the latter it is dispossessed whenever the statute is brought to its notice in any way, by the defendant or the plaintiff, or otherwise. In both the court has full jurisdiction of the subject-matter when the action is begun in time; in neither does the disability grow out of the nature of the subject or of the remedy; in both it arises simply from the lapse of time. There is an absolute similarity between the two in every respect except the one which we have indicated.
These views are fully sustained by the decision of the Supreme Court in Jackson v. Austin (10 Pet., 480).
It will be observed that in several of the cases iu which the courts have granted amendments similar to that now prayed for, the statutory period had elapsed, and the defendants stood ready to raise the statutory bar against a new action. The court assumed that they would do so, and allowed the amendments solely for the purpose of retaining jurisdiction of the subject-matter and administering justice. This removes the only distinction between the effect of the bar of the ordinary statute of limitation and that of the bar in question, and completes the parallel. The bar in both is about to be raised; the court in both is about to be deprived of jurisdiction; the amendments in the one case are allowed for the purpose of escaping from these results. With equal reason they should be allowed in the other. It seems to us that the cited opinions become directly applicable to the decision of the present motion and not only warrant, but require the court to render it in accordance with their equitable spirit.
*348 There is certainly no equity in the proposition that the court, has no jurisdiction because the two years have expired in which-claimants were allowed to bring their actions under the captured and abandoned property act. The rightful claimant did' come into court within the time allowed, and only inadvertently neglected to describe the representative capacity in which she-sued, and to correctly describe the ownership of the cotton at-the time of seizure. The proper parties were before the court in due time; the number of bales of cotton was exactly given; and the fact of their capture by the military forces of the government was alleged, and the place where they were taken,, though incorrectly described, was sufficiently designated to indicate the specific cotton referred to. It would have been a sufficient allegation to lay the foundation for an amendment more-fully setting forth her case if she had alleged simply that she claimed the proceeds in the Treasury of 112 bales of cotton seized in July, 18(53, in Yazoo County, Mississippi. She did in fact make that allegation, but coupled it with descriptions-which proved to be erroneous.
There is no conflict of interest here between claimants. There-never has been. The same individual has from first to last stood at the bar of this court, asking the same judgment for the same cause of action, and now prays only that her real capacity and interest as her husband’s representative shall appear of record.
There was, therefore, enough in the original petition to give the court jurisdiction of the parties and of the subject-matter, and there is enough by which to amend.
In Randolph Ex. v. Barrett Ex. (16 Pet., 138), the Supreme-Court say “the power of the court to authorize amendments where there is anything to amend by is undoubted.”
The precedents of this court are all in entire accord with the-views of the law and -of our duty which we have here expressed,, except the decision on the previous motions in this case already alluded to.
In the case of Jackson, assignee of Frémont (1 C. Cls. R., 260, and 2 ib., 461), it was held that the assignee could not maintain an action in his own name, and an amendment was allowed, to-save the bar of the statute of limitations, making Frémont, the assignor, the party claimant. In Cowan's Case (5 ib., 106) the action was brought in the name of the heirs of the deceased *349 •owner of tbe cotton; and after tbe two years’ limitation had •expired, the court allowed the administrator of the owner to be substituted to prosecute the action in order to save the rights •of the parties. Similar amendments were allowed in Parran’s Case (7 ib., 450) and in Green’s Case (7 ib., 496).
In Cowan’s Case (5 ib., 106) this court said :
“The object of the statute was to secure all claims being presented within this fixed and definite period. It seems'"to us that this object of the statute was substantially attained if the real parties in interest notified the government, by suit brought within the proper time, of their interest in these particular pro-meeds in the Treasury, and that it is of little consequence ■whether the suit was commenced by the right or the wrong representative, so long as it was brought for the party really entitled to receive the net proceeds and so long' as the interest represented remains unchanged.”
In the Elgee Cotton Cases (7 ib., 605; 22 Wall., 180), an -■■action was brought, in 1866, for the recovery of the proceeds of 582 bales of cotton by the several heirs of John K. Elgee, deceased, one of whom, a daughter, Mrs. Gaussen, had been appointed as executrix of his will, but was not so declared in the petition. In 1870 the action was dismissed. In 1871 it was reinstated; motions were allowed discontinuing as to all the ■claimants except Mrs. Gaussen, and amending the petition so as to declare her to be executrix, according to the fact. She recovered judgment for part of the proceeds. An appeal was taken to the Supreme Court, where objection was made to the .right of this court to allow such amendments after two years’ limitation had expired, and was there fully argued. The court gave judgment in favor of the executrix, and, in a long opinion ■on other points, did not consider this objection of importance ■enough to be noticed. The reporter in 22 Wallace makes a mistake, and says that Elgee died after action brought; but we have no idea that the Supreme Court made a mistake on a point :so clearly put and so fully argued. They intended to sustain •the amendments allowed by this court, and they did in fact do so.
It is true that in all the cases here cited there was a more .accurate description of the property in question than in this case; but as we have shown that the defendants have not been misled by the variance in this petition, that difference between -the cases becomes immaterial. Besides, even where there has ■been variance between the allegation and the proof as to the *350 ownership and description of the property, both this court and the Supreme Court have been equally liberal in allowing amendments and sustaining the claim as proved. In the case of Francis E. & Ramon Molina (6 C. Cls. R., 269), the claimants brought their action to recover the proceeds of 24 bales of cotton alleged to be owned by them jointly. They proved the seizure of the same number of bales owned by one of the claimants alone. An amendment was allowed so that the sole owner could recover, and judgment was rendered in his favor.
In Villalonga’s Case (8 ib., 452; 10 ib., 22, 429; 23 Wall., 35) the only description of the property and its ownership by the claimant was that u at the time of the capture of the city of Savannah * * * in the month of December, 1864, he was then and there possessed, in Ms own right, of 493 bales of cotton, which were then and there Ms men property, and which were then and there duly stored; marked, and numbered.” At the trial he proved only 19G bales as his own property, possessed in his own right. But he also proved that he had a lien for advances on 297 other bales of cotton in his possession owned by other parties. lie was allowed to recover, and judgment was rendered in his favor for his advances on the cotton owned by the other parties, as well as for the proceeds of that which he proved to be his in his own right, notwithstanding the variance.
Mrs. Mount’s Case (11 C. Cls. R., 508), in which the court refused to admit the administrator of the true owner of the property after the two years’ limitation expired, may seem, upon a superficial reading, to be precisely like this case; but on careful examination it will be found like it only in form. In substance and in fact it is entirely different. During the lifetime of her husband, Mrs. Mount brought her action to recover the proceeds of five bales of cotton alleged to have been owned by her and stored in her gin-house on the plantation owned and cultivated by'her. The proof showed that the cotton in question belonged in fact to her husband, who was living when the action was commenced, and who lived till several years after the two years’ limitation had expired, when his son was appointed administrator on his estate. Mrs. Mount, therefore, never had any standing in court. She was in no sense and m no capacity whatever either the owner of the property or entitled to its proceeds. No amendment could have been made to cure the *351 fatal defect of the case. There was no mistake of counsel or client. Her claim was one adverse to that of her living husband ; and an adverse party in interest cannot be allowed to come into court and to be substituted as claimant in an action brought by one with whom he is shown to have no privity of interest. The administrator of the husband had no greater rights than his intestate, had; the husband could not have been substituted as claimant during his lifetime after the term had expired within which he might have sued, so neither could the administrator after the death of his intestate.
In Hamner's Case (13 C. Cls. R., 7) a precisely similar difficulty was found as that which arose in Mount’s case, and for like reasons a motion to substitute the administrator of the deceased owner was overruled.
The party who sought to be admitted to prosecute the action had no privity of interest with the claimant who brought the suit. The allegations of the latter in his petition were adverse to the claim set up by the former, and could not be amended without bringing in an entirely new party not previously before the court in any capacity.
Thus we find ourselves on every consideration forced to a different conclusion from tliat formerly reached by the majority of the court when refusing to allow the previous motions. Those motions were imperfectly drawn, although designed to accomplish the same results now sought. (12 C. Cls. R., 273.) The decision then was made by a bare majority of the judges. Two of those who dissented have retired from the bench, and the two who have taken their iffaces agree with their immediate predecessors and are of opinion that the motion should have been allowed. One of the judges who then concurred in the decision, now, upon a more perfect presentation of the case and after more full and mature consideration of the whole subject, is of opinion that counsel should have been allowed to amend in proper form, so as to correct the manifest errors in the body of the petition, and that the amendments and the motion to substitute the administrator de bonis non of John H. Thomas should ' have been granted.
The fact was not then distinctly presented, as it now is, that Mr. Thomas, the husband, never could have brought an action in this court, he having died before the court was open to claimants under the Captured or abandoned property Act (Tib *352 bett’s Case, 1 C. Cls. R., 169). The case shows thafc material fact to have been overlooked by counsel, and therefore not considered by the court.
Another of the then concurring judges is of opinion that the court should allow this motion if it has jurisdiction to do so, and he assents to the entry of such allowance in order that the case may be put in such condition that the question may be determined by the Supreme Court on appeal.
A merely interlocutory decree, prescribing the manner of proceeding deemed necessary by the court to arrive at a final decision, remains under its control, and does not constitute res judicata. (4 La. Ann., 211; Henn. Dig., 764, Nos. 13, 14.)
The authority of that decision, therefore, under the circumstances, we do not consider as finally concluding us upon the important questions involved in this motion.
On the whole, we are of opinion that on principle, precedent, and authority the motion should be allowed.
The order of the court is that, finding that the proposed amendments are for the purpose of correcting errors inadvertently made by counsel through an imperfect knowledge of the facts in the case and not in order to introduce a new cause of action; that if allowed the amended petition will correctly set out the claim as it should have been originally presented; and that no delay, inconvenience, or injury lias been caused to the defendants by reason of said errors, and that the allowance of the amendments' will be in furtherance of justice, the court allows the motion.