Richardson, Oh. J.,
delivered the opinion of the court:
The claimant was United States district attorney for the eastern district of Arkansas.
In that capacity there were tried by him, before a jury, twenty-two indictments for crimes, in each of which a conviction was had.
Sections 823 and 824 of the Revised Statutes prescribe the compensation to be “taxed and allowed to attorneys, solicitors, and proctors in the courts of the United States, to district attorneys, clerks of the Circuit and District Courts, marshals, commissioners, witnesses, jurors, and printers in the several States and Territories, except in cases otherwise expressly provided for by law.”
Among the items enumerated in section 824 is the following:
“ When an indictment for crime is tried before a jury and a conviction is had, the district attorney may be allowed, in addition to the attorney’s fees herein provided, a counsel fee, in proportion to the importance and difficulty of the cause, not exceeding $30.”
*32 The amount of the allowance is thus left discretionary without specifying by whom the discretion shall be exercised. Very naturally, from the first enactment in 1853 to the present time, it has always been exercised by the judge before whom the causes were tried, because the taxation of costs is an incident of the trial and judgment, and as much within the power of the court as any other judicial duties. The reports abound in cases where the courts have passed upon the allowances of costs without question. In the case of The United States v. Ingersoll (Crabb, 135) it was stated as a general principle that “ the allowance of costs to a district attorney is altogether in the jurisdiction of the judge and not within the power of the officers of the Treasury.”
In this particular item of allowance there seems to be a special reason why the discretion should be exercised by the court, in/this, that the amount allowed is to be “in proportion to the importance and difficulty of the cause,” which can be best known to the judge who presided at the trial.
To the claimant, following the uniform practice, the court made allowances, fixing the amount in each cause at $30.
In making his semi-annual accounts to the Attorney-General for settlement at the Treasury Department, as required by Bevised Statutes, sections 833, 846, and the Aet of February 22, 1875, chapter 915 (Supp. Rev. Stat., 145), the claimant included items of *‘$30 counsel fee allowed by court” in each of said‘'twenty-two cases of indictments tried by. him where convictions were had. The accounts were duly approved by the court’as required by the act of 1875.
The Attorney-General reduced the amount of allowances to $20 each in five cases, $15 each in fourteen cases, and $10 each in three cases, thus disallowing $320 in all. The accounting officers of the Treasury followed the action of the Attorney-General ¡¡and made the same reductions. The amounts thus deducted from the allowances made by the court have not been paid¡to the claimant, and he brings this action to recover the same.
The issue raised involves the powers and duties of the Attorney-General and the accounting officers of the Treasury in relation to the allowances and accounts of district attorneys.
On behalf of the defendants the authority of the Attorney- *33 General to make tbe reductions is •of the Bevised Statutes, which is as follows:
“The Attorney-General shall exercise general supervisory powers over the accounts of district attorneys,marshals, clerks, and other officers of the courts of the United States.”
What those supervisory powers are is not defined, and the words, taken by themselves, do not convey a very definite idea. Webster gives the meaning of supervise to be “ to overlook, to •oversee, to superintend, to inspect.” That implies only the duty of seeing to it that all is rightly done and in accordance with previous directions, and not the power of reviewing and altering what has been done by regular authority.
If there be any doubt as to the meaning of a word as used in an act of Congress, we may review other acts on the same subject and learn from them what was really intended by the law-making power, as we did as to the word “ vacancy,” in Farden’s Case (15 C. Cls. R., 353), affirmed by Supreme Court (99 U. S. R., 10), and “ revenue laws,” in Beckwith’s Case (16 C. Cls. R., 262), and of “barred” in McClure’s Case (19 C. Cls. R., 24).
The acts previous to the Bevised Statutes throw ). light on the question now under consideration. “to
In a general revision made with the paramount object “to revise,- simplify, arrange, and consolidate all statutes,” the construction of a section will not be changed by such alterations of the language of the former act as were designed to render the provisions more concise, (Mooers v. Bunker, 9 Foster, 421.) Section 368 is a reproduction, in more concise language, of the Act of June 22, 1870, chapter 150, section 15 (16 Stat. L., 164), which is as follows:
“The supervisory powers now exercised by the Secretary of the Interior over the accounts of the district attorneys, marshals, clerks, and other officers of the courts of the United States, shall be exercised by the Attorney-General, who shall sign all requisitions for the advance or payment of moneys out of the Treasury on certificates or accounts, subject to the same control now exercised on like estimates or accounts by the First Auditor or First Comptroller of the Treasury.”
The supervisory powers exercised by the Secretary of the Interior were transferred to him in the first place from the Secretary of the Treasury by the Aet of March 3,1849, chapter 108, section 4 (9 Stat. L., 395), in the identical language adopted *34 by the act of 1870 transferring the same to the Attorney-General.
Let us now see what had been the supervisory powers of the Secretary of the Treasury and the Secretary of the Interior, as defined by the statutes.
By the Act of March 3,1791, chapter 22, section 1 (1 Stat. L., 217), it was provided as follows:
“ The accounts of the several officers [among whom were district attorneys] for compensation aforesaid, having been previously examined and certified by the judge of the district, shall bq passed in the usual manner at, and the amount paid out of, the Treasury of the United States.” This was repealed by the Act of March 3, 1841, chapter 35, and there was allowed by it “ to the attorney of the United States for the district such fees in each State, respectively, as are allowed in the supreme court of the same, and also like compensation for traveling as is allowed to the clerk of the Circuit and District Courts.” No return was required to be made to the Secretary of the Treasury.
The Act of March 3,1841, chapter 35, section 1 (5 Stat. L., 427), made the following provision :
“ The fees and emoluments retained by the district attorneys, marshals, and clerks, exclusive of any reasonable compensation for their deputies, to be allowed in their accounts by the courts of the respective districts to which they belong, and after the payment of such necessary office and other expenses as shall be allowed by the Secretary of the Treasury, not to exceed [the amounts specified], the overplus of fees and emoluments to be paid into the public Treasury under such rules and regulations as may he prescribed by the Secretary of the Treasury, subject to the disposition of Congress.”
The Act of May 18, 1842, chapter 29, item No. 167 (5 Stat. L., 483), was more full and explicit on the subject, as follows:
“ Every district attorney, clerk of a District Court, clerk of a Circuit Court, and marshal of the United States, shall, until otherwise directed by law, upon the first days of January and July in each year, commencing with the first day of July next, or within thirty days from and after the days specified, make to the Secretary of the Treasury, in such form as he shall prescribe, a return, in writing, embracing all the fees and emoluments of their respective offices, of every name and character, distinguishing the fees and emoluments received or payable under the bankrupt act from those received or payable for any other service; and in the case of a marshal, further dis *35 tinguishing the fees and emoluments received or payable for services by himself personally rendered from those received or payable for services rendered by a deputy; and also distinguishing the fees and emoluments so received or payable for services rendered by each deputy, by name, and the proportion, of such fees and emoluments which, by the terms of his service, each deputy is to receive; and also embracing all the necessary office expenses of such officer, together with the vouchers for the payment of the same, for the half year ending on the said first day of January or July, as the case may be; which return shall be, in all cases, verified by the oath of the officer making the same. * * *
■ “And no district attorney shall be allowed by the said Secretary of the Treasury to retain of the fees and emoluments of his said office, for his own personal compensation, over and above his necessary office expenses, the necessary clerk hire included, to be audited and allowed by the proper accounting officers of the Treasury, a sum exceeding $6,000 per year, and at and after that rate for such time as he shall hold the office. * * * And every such officer shall, with each such return made by him, pay into the Treasury of the United States, or deposit to the credit of the Treasurer thereof, as he may be directed by the Secretary of the Treasury, any surplus of the fees and emoluments of the office which his half-yearly return so made as aforesaid shall show to exist over and above the compensation and allowances hereinbefore authorized to be retained and paid by him.
“And in every case where the return of any such officer shall show that a surplus may exist, the said Secretary of the Treasury shall cause such returns to he carefully examined and the accounts of disbursements to be regularly audited by the proper officers of his Department, and an account to be opened with such officer in books to be provided for that purpose, and the allowances for personal compensation for each calendar year shall be made from the fees and emoluments of that year, and not otherwise.”
The next act bearing upon the subject was that of 1849, •already cited, transferring to the Secretary of the Interior the supervisory power of the Secretary of the Treasury.
In 1853, by the Act of February 26, chapter 80 (10 Stat. L., 161, 162), an entirely new fee bill was enacted in lieu of the compensation previously allowed. Then first appeared the provision that there might be allowed to a district attorney a counsel fee in .proportion to the importance and difficulty of the cause, not exceeding $30, in the same language as is now found in section 824 of the Revised Statutes.
*36 The Act of June 27, 1864, chapter 27 (13 Stat. L., 196), contains the following:
“Seo. 2. That no marshal nor district attorney of the United States shall, by reason of the discharge of the duties of his office, now or hereafter required of him by law, or in any case in which the United States shall be bound by the judgment which may be rendered in the same, be allowed to retain out of the fees, charges, and emoluments thereof, whether prescribed by statute or allowed by the court or the judge thereof, a greater maximum compensation than ihat fixed by the act aforesaid [the act of 1853, above cited].”
Thus we see what was the general character of the supervisory powers of the Secretary of the Interior. They were numerous in details, but it is evident that they did not extend to reviewing and altering the allowances made by the court or judge in the discretionary power conferred by the act of 1853. This is especially apparent from the act of 1864, which classes ■such allowances with the fees prescribed by statute which nobody, probably, would contend could be changed and reduced under any supervisory power of the Secretary of the Interior. What power of supervision the Secretary of the Interior had was transferred to the Attorney-General, and, in our opinion, it extends to seeing that the accounts are in due form, in accordance with the law and regulations; that all receipts are properly credited ; that all items of payments and allowances are authorized by law; that nothing is retained beyond the maximum fixed by statute, “ and that in every respect the law relating to the same has been fully complied with,” and does not include the power of reviewing the discretion of a judge in making allowances, and of altering his orders and decrees therein.
There is a material difference between making an allowance under Revised Statutes, section 824, and approving an account under the act of 1875. The allowance of counsel fee under the-Revised Statutes, section 824, is a judicial act, which, like other judicial acts, cannot be revised by executive officers, according to the theory of our form of Government. (O'Grady’s Case, 22 Wall., 641; Beckwith’s Case, 16 C. Cls. R., 262, 263.) The settling of an account, when not an incident of a suit at law or in equity, is executive business, and may be revised by different ■executive officers, even after, as in the case of district attorney’s accounts, it has been passed upon by a judge who does *37 not allow but merely approves the same. {Turner's dase, 19 C. Cls. R., 635.) In supervising an account, the allowances made by the court are no more subject to revisal than are the fees expressly prescribed by statute. In one case, as in the other, the supervising officer can only see to it that they are charged in conformity to law.
This brings us to the power and duties of the accounting officer of the Treasury in this matter. The Act of February 22, 1875, chapter 95, section 1 (Supp. Rev. Stats., 145), requires district attorneys and others to render their accounts, with the vouchers and items thereof, to a United States Circuit- or District Court, and prove the same, as therein provided, to the satisfaction of the court, and the court is required thereupon to cause to be éntered of record an order approving or disapproving the account as may be “ according to law and justice.” Then follows this provision :
“ Nothing contained in this act shall be deemed in anywise to diminish or affect the right of revisión of accounts to which this act applies by the accounting officers of the Treasury as exercised under the laws now in force.”
This means nothing more than that the approval or disapproval by the court shall not be held tó be a judicial act, conclusive upon all parties, but shall be regarded merely as a step or process in the executive business of settling accounts, as we held in Turner’s Case (19 C. Cls. R., 629). The right of revision by the accounting officers thus referred to “ as exercised under existing laws now in force ” is found set forth in Revised Statutes, section 846. After requiring the accounts of district attorneys and others to be certified by a judge and presented to the Treasury Department, it is there enacted that u they shall then be subject to revision upon their merits by said accounting officers, as in the case of other public accounts.”
This leaves the powers and duties of the accounting officers of the Treasury as to the accounts of district attorneys precisely the same as they exist in relation to all other accounts adjusted and settled by them; no greater and no less. Those powers and duties are well understood.
The Auditor merely examines and audits accounts, neither allowing nor disallowing the same, certifies balances, and transmits the same to the Comptroller for his decision thereon.
The Comptroller decides whether or not the items are author *38 ized by statute, and are legally chargeable. He has no power to review, revise, and alter items expressly allowed by statute nor items of expenditures or allowances made upon the judgment and discretion of other officers charged with the duty of expending the money or of making the allowances. His duty extends no further than to see that the officers charged with that duty have authorized the expenditures or have made the allowances. His decision thereon is, by Revised Statutes, section 191, made “ conclusive upon the executive branch of the Government, and subject to revision only by Congress or the proper courts.”
It is the theory, and a wise one, upon which the final adjustment and settlement of accounts in the Treasury Department is founded, that the officers who pass upon them shall be wholly distinct from those who expend the money or incur the liabilities. For the manner in which these latter officers perform the trust imposed upon them they alone are responsible; the Comptroller is only charged with the duty of seeing that they Jceep within the law. (Longwill’s Case, 17 C. Cls. R., 288; Ridgway’s Case, 17 id., 715; McKnighfs Case, 13 id., 292.)
It was said by the Supreme Court in United Stales v. Jones (18 Howard, 92), in reference to the expenditure of money intrusted to the discretion of the head of a Department:
“The accounting officers of the Treasury have not the burden of responsibility cast upon them of revising the judgments, correcting the supposed mistakes, or annulling the order of the heads of Departments.”
This being so, they certainly have not the burden cast upon them of reversing the judicial acts of the courts, which even the head of a Department can neither revise nor override. {O'Grady v. United States, 22 Wall., 641, and 10 C. Cls. R., 134.)
It was not until 1878 that the power of reviewing and reducing allowances of counsel fees made to district attorneys by the courts was first assumed and exercised by the Attorney-General and the accounting officers of the Treasury (see Finding v). In our opinion it is not warranted by law.
The uniform practical construction given to the statutes by the courts, the Secretary of the Interior, the Attorney-General, and the accounting officers for twenty-five years immediately following the act of 1853, which first authorized such allow- *39 anees, lends additional force to the manifest reasons which indicate that Congress intended by that act and Eevised Statutes, section 824, to intrust to the courts the discretion of allowing to district attorneys counsel fees in the specified cases tried before them “in proportion to the importance and difficulty of the cause” without review by executive officers, and removes every shadow of doubt on the subject, if any there were. (Stuart v. Laird, 1 Cranch, 299; Edwards, lessee, v. Darby, 12 Wheat., 210; Mrs. Alexanders Case, 12 Wall., 177; Pugh’s Case, 99 U. S. R., 265; Hahn’s Case, 14 C. Cls. R., 318— affirmed 107 U. S. R., 402; Peabody v. Stark, 16 Wall., 240; Harrison’s Case, 20 C. Cls. R., 126.)
The claimant is entitled to recover the remainder of the allowances made to him by the courts which have not been paid, and judgment will be entered in his favor for $320.