MARSH v. DODGE.

*Estoppel — licensee under patent estopped from denying its validity. Contract — construction of.*

Plaintiff, who owned a patent upon rakes, licensed defendants to manufacture under such patent, defendants agreeing to pay him $10 royalty upon each rake made and sold by them, or by their authority or procurement. Defendants made and sold certain rakes, and afterward transferred their license and a number of rakes completed and in the process of manufacture to a corporation which subsequently carried on defendants' business. In an action to recover such royalties, *held*, (1) that defendants were estopped from denying that the rakes made and sold by them were made under plaintiff's patent, or (2) from denying either the existence or the validity of such patent, and (3) that the transfer to the corporation of the rakes completed and uncompleted was such a sale as would, under the contract, entitle plaintiff to his royalty.

APPEAL by defendants from a judgment in favor of plaintiff, entered upon the verdict of a jury, and from an order denying a new trial.

The action was brought by James S. Marsh against John A. Dodge and others to recover royalties claimed to be due under an agreement in writing between plaintiff and defendants. Sufficient facts appear in the opinion.

*H. V. Howland,* for appellants.

*Rollin Tracy,* for respondent.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

GILBERT, J. This action was brought to recover a royalty accruing upon the manufacture and sale of patented rakes under an agreement made by the defendants as copartners with the patentee,

who is the plaintiff. The agreement is in writing, under the hands and seals of the plaintiff and defendants respectively.

It contains a recital of the fact that the letters patent had been issued to the plaintiff, and an agreement on the part of the defendants to pay the plaintiff $10 upon each of the rakes that should be made and sold or disposed of by them, or by their authority or procurement, during the period for which the license continued. The plaintiff's claim was limited by the complaint to rakes manufactured prior to January 1, 1867. It appeared that the defendants had ceased to manufacture rakes after March 10, 1866, and had been succeeded in that business by an incorporated company, to whom they had sold and transferred all their partnership effects, including all the rakes manufactured by them prior to that time and remaining unsold, and including also a large number of rakes in process of manufacture. It appeared also that the defendants before the transfer to the company had sent some of the completed rakes to their agents in various parts of the country to be sold, and that purchasers from such agents had the privilege of returning the rakes bought if they should not be suited by them.

Much of the time spent in the trial was devoted to the examination of witnesses upon the question whether the rakes actually manufactured were in all respects such as were specified in the plaintiff's patents. This inquiry ought to have been excluded, because the defense which that kind of evidence tended to establish had not been pleaded. It was, however, indulged by the court, without objection, and the questions arising upon it were fairly and correctly submitted to the jury. In the course of this inquiry the defendants offered in evidence a patent granted to the defendant Dodge, bearing date August 20, 1867, for a rake similar to that invented by the plaintiff. It was excluded, and the defendants excepted. We think this exception, as well as those taken to the judge's charge on the subject involved in this evidence, were unavailing for this reason, if for no other, namely: that the evidence was not material to the issue. And in respect to the rejection of Mr. Dodge's patent, the plaintiff's claim did not embrace rakes that were manufactured after that patent was issued, so that, in any point of view, the evidence was irrelevant.

Moreover, the defendants were estopped to deny that the rakes manufactured were made under the plaintiff's license, so long as they retained the license itself. They were at liberty to relinquish

it at any time, and they were bound to do so if they intended to deprive the plaintiff of his royalty. Good faith requires that a licensee shall give to the owner of the patent notice of his renunciation of the license so that the privilege may be sold to others before he can be permitted to repudiate his obligations under it.

The agreement of the plaintiff to give a drawback of $3 was not admissible in evidence. It was not a part of the license, although it was made on the same day, but it referred to another and independent transaction. If the defendants wished to avail themselves of that agreement, they should have pleaded it, and have set up their counter-claim under it. Not having done so, it was not available to them as a defense. Code, §§ 149, 150, and Wait's Notes.

An exception was taken by the defendants to the admission of the plaintiff's patents in evidence, on the ground that they were not properly authenticated. We are inclined to think this exception was not good ; but we do not deem it worth while to discuss the subject, for the reason that proof of the patents was not necessary. We think the defendants were estopped to deny either the existence or the validity of the patents. They had, under the license, all that they bargained for. They cannot, therefore, be permitted to say that the rakes which they made, or caused to be made, were not made under the license, because the plaintiff had not the patents recited in it — because such patents were invalid, any more than a tenant can deny that he occupied under the lease which he took from his landlord. *Lawes* v. *Purser*, 6 El. & Bl. 930 ; *Baird* v. *Neilson*, 8 Cl. & Fin. 726 ; *Noton* v. *Brooks*, 7 H. & N. 499 ; *Crossley* v. *Dixon*, 10 H. L. Cas. 293 ; 1 Greenl. Ev., §§ 22, 27.

Many other exceptions were taken by the appellants to the admission and rejection of evidence. We have examined all of them and found no error.

In submitting the case to the jury, the court restricted the liability of the defendants to the number of rakes actually manufactured by them in conformity with the improvement specified in the plaintiff's patents, and which had been actually sold. But he treated the transfer of the defendants to the corporation as a sale of the completed rakes to them ; and the sale by the corporation of the unfinished rakes transferred to them by the defendants, and which the corporation afterward finished and sold on their own

account, as a sale made by the authority or procurement of the defendants within the terms of the license. We think that principle is correct. The sale to the corporation was something more than a mere transfer of the materials of which the rakes were composed. It gave to the rakes a quality of vendibility which they would not otherwise have possessed in the hands of the corporation. Both the corporation and the defendants must have intended that the former should acquire the right to re-sell them, without becoming liable to the plaintiff for an infringement of his patents. The defendants parted with all their title to them, and therefore could not sell them without a re-purchase, and no liability would attach to the corporation, because they never agreed to pay the royalty. The consequence would be that, if the transfer to the corporation should not be regarded as a sale within the meaning of the license, the plaintiff would, by a species of legerdemain, be deprived of his royalty altogether. The same principle ought to govern the transfer of the unfinished rakes. The sale of them by the corporation would be protected by the license, because they were sold by the licensee in an unfinished state to the corporation for the purpose of being finished and sent into the market and sold. Such a sale could not be treated otherwise than one made by the authority and procurement of the defendants. They should, therefore, pay the royalty on them.

A case similar to this was recently decided by the Commission of Appeals in accordance with the views expressed (*Wilder* v. *Stearns*, 48 N. Y. 656), and we think a contrary principle would be incompatible with the rights and obligations of the parties.

An exception was taken to an expression in the judge's charge to the effect that rakes which the defendants had sent to their agents constituted a sale, and the plaintiff was entitled to a royalty upon them. Taken by itself, disconnected from the rest of the charge, this would be erroneous; but, when the whole charge is considered, the instructions on this subject were unexceptionable. The rakes in the hands of agents passed in the sale to the corporation, and the jury were told very plainly that the defendants had a right to sell them conditionally, and that if any of them were returned to the defendants, or to the corporation, by reason of their failure to conform to the condition on which they had been sold, the defendants were not liable for the royalty upon the rakes so returned. This was more favorable to the defendants than they had a right to

ask, for the rakes, when returned, would form part of the effects of the defendants which were the subject of the sale made by them to the corporation, and consequently the plaintiff would be entitled to the royalty by virtue of that sale.

The criticism that the complaint does not embrace sales made by the authority or procurement of the defendants, but only such as were made by them personally, is too critical.

Upon the whole case, therefore, we think the judgment should be affirmed.

*Judgment affirmed.*