Davis, J.,
delivered the opinion of the court:
The plaintiffs claim as assignees of the inventor and patentee of a patented article. Their original petition was filed Decern- *298 ber 9, 1874. At tbe same term tbe defendants answered by a general traverse and by setting up tbe statute of limitations.. Tbe plaintiffs then filed an amended petition, upon wbicb they now rest.
Tbe amended petition sets forth that tbe claimants are a corporation existing under tbe laws of New York, and that at a date not given, but wbicb must have been prior to September-13, 1858, tbe plaintiffs’ assignor agreed that if experiments with bis patented article should prove to be successful tbe United States might use the invention, paying therefor such sums as-tbe same might reasonably be worth, and that tbe United States, through their Secretary of War, agreed that such remuneration-should be made in case of their using it; that on tbe 13th September, 1858, tbe inventor granted tbe defendants, by a written license, permission to manufacture and use tbe patented article-to a limited amount at a fixed rate of royalty; that on tbe lltk ' February, 18C0, by another written license, made in pursuance-of tbe original agreement, be granted them permission to further manufacture and use it for a limited amount at a fixed but different rate of royalty; that fresh experiments, begun after tbe war, resulted in an order made July 26, 1866, under wbicb tbe manufacture was made for wbicb compensation is now demanded; that Congress provided in 1873 for the adoption of' a breech-loading system of muskets and carbines, upon tbe recommendation of a board to be appointed by tbe Secretary of War; that tbe board recommended tbe Springfield system, wbicb embraces tbe said inventions; and that by tbe act of Congress, supplemented by tbe action of tbe board after trial as contemplated by tbe original agreement, the defendants adopted tbe inventions and thereby became bound to pay for them such sums or royalties as they are reasonably worth, and that on or about tbe 25th July, 1870, the inventor assigned to tbe claimant bis patents and all tbe licenses or agreements thereunder.
At tbe December term, 1878, tbe defendants filed a special plea, denying tbe inventions by tbe plaintiffs’ assignor, and giving notice that at tbe trial they would show that tbe things-claimed as new were known prior to tbe alleged invention. This-plea was stricken out on the plaintiffs’ motion after bearing.
Tbe defendants now file three further~pleas, wbicb tbe plaintiffs move to strike out. Tbe first is tbe plea that there is no-such corporation. Tbe law is well settled that a corporation *299 claimant is not to be required to prove its incorporation, unless the allegation thereof is specially traversed (Hebrew Congregation, &c., v. The United States, 6 C. Cls. R., 245), and that the general issue admits the competency of the plaintiff to sue in a corporate capacity. Society for Propagation of the Gospel v. Town of Pawlet, 4 Pet., 480.)
The defendants’ general traverse was, therefore, a waiver of' the special defense of mil tiel corporation. It is unnecessary for as to decide whether the right was revived by the amendments ; because, in any event, the time allowed for pleading specially by section 1 of Article III of the Rules has gone by..
The second plea is in substance that no part of the inventions described in the patents is embodied in any of the manufactured articles for which royalty is claimed. The claimants say that this should be stricken out, because it has already been in substance alleged in the general traverse, and because it will prejudice, delay, and embarrass the fair trial of the action. We-will consider this in connection with the nest branch of the- • motion.
In their third plea the defendants set up that the alleged inventor was not the real inventor of the patented articles, but-that the same were known before his alleged invention to others,, and were described in various printed publications, as set forth in the plea. The claimants'allege that this is the same matter pleaded at the December term, 1878, and stricken out by order of the court, and that it is framed to prejudice, embarrass, and delay a fair trial.
Some allegations in the plea which was stricken out at the-December term, 1878, differed substantially from those in the • present plea. The action of the court at that time is therefore no precedent for its duty now.
The allegations in both pleas, that they tend to prejudice and embarrass the claimants at the trial, grow out of the notices, which the defendants give of the evidence which they propose-to introduce at the trial in order to invalidate the claimants’ patents. The real question before us is, therefore, whether such evidence is admissible in defense.
The claim now in suit is founded upon an alleged license-made in 1858 by the inventor to the defendants to use his alleged inventions; and an alleged agreement then made, that in case-the defendants should use them they would pay what such use- *300 was reasonably worth; and the allegation that after 1866 the defendants took them into use, and that they are reasonably worth the sum demanded.
Now, whether this claim is to be regarded as set up ulider the original license, or as set up under an implied contract of license, the defendants in either case, as the pleadings stand, are not precluded from denying the originality of the invention. For if the patent is worthless, the use of the invention does not injure the patentee. (McKeever v. The United States, 14 C. Cls. R.., 396.) "The taking of a naked license or permission to work under a patent does not, without some recitals or covenants amounting to an admission, estop the licensee from denying the validity of the patent, or the fact of infringement, if he is sub-subsequently proceeded against. (Curtis on Patents, § 215.)
The claimants cannot be damaged in the remotest way by a •notice of the proof which the defendants will offer on these points. In corresponding cases in other courts a defendant is required to give such notice. (Eev. Stat., § 4920.) We are unable to see how a like course here can prejudice or embarrass the claimants, or how it can embarrass or delay the fair trial of the action.
Some questions of jurisdiction have been discussed. We refrain from expressing an opinion upon these questions in the present stage of the case.
The first branch of the claimants’ motion is allowed, and it is ordered that the defendants’ plea that the plaintiff ought not to have or maintain this action, because there is no such corporation, be sticken out; and as to the second, third, and fourth •branches of said motion, relating to the defendants’ said second and said third pleas, it is ordered that the motion be denied.
The foregoing opinion was read, and the orders in accordance therewith entered on the 7th March last. On the 28th of that month the claimants’ counsel moved for a rehearing of this ■motion. Upon this motion, on the 4th of April—
Davis, J.,
delivered the opinion of the court:
The claimants ask a rehearing on their motion to strike out three special pleas interposed by the defendants. They take mo exception to our action on the first plea. They say in their *301 brief, “As to tbe second plea, -we are not inclined to exhibit, any great solicitude, nor to press upon the court with any degree-of earnestness a reconsideration.” The present motion relates therefore to the third plea only. At the hearing, counsel went fully into the question of the merits of this plea, and gave the court to understand that, should their motion for a rehearing-be allowed, they would have nothing further to say on this point. We therefore proceed without further argument to express our views on the main questipn more at large than in our former opinion.
This action is brought for the recovery of royalties for the manufacture and use of an improvement in fire-arms patented to George W. Morse. The plea which is now the subject of controversy consists of two parts, or branches, to some extent independ ent of each other.
The first branch admits the issue of letters patent to the claimants’ assignor; sets forth sundry experiments with the patentee’s gun in the War Department and in the Navy Department; avers that the gun.was found to be unsuitable for mili, tary purposes, although ingeniously constructed; a dmits certain licenses for a limited number of guns in the main as set forth in the complaint, and payment therefore in full; avers that the invention was reported to the Secretary of War as imperfect and difficult to adapt to military use; admits that a large number of guns have been altered to breech-loaders at Springfield on the Springfield system, and that that system has been adopted under the act set forth in the complaint; denies that there was ever an express contract between the defendants and Morse or the claimants for the use of the inventions, other than those set forth in the plea; denies that any negotiations were carried on with Morse after 1861, or that he objected or consented to the alteration or manufacture of breech-loading guns after that date by the defendants; and denies that any guns manufactured or altered prior to 1861 ever received actual test in the field.
To this branch of the plea the claimants allege that the matter has been already averred in substance in the general traverse,, and that the claimants will be prejudiced and delayed and embarrassed in a fair trial of the action if it is not stricken out.
It has been repeatedly held that this court is not bound by special rules, of pleading. (Burns Case, 12 Wall., 246; Thomas’s Case, 15 C. Cls. R., 342; Burk’s Case, 13 ib., 238.) Proceedings. *302 are conducted here with a view to effecting substantial justice, irrespective of technical forms. We regard it as immaterial whether the defendants can or cannot offer under the general issue all which they set up in this branch of this plea. The anatter is pertinent to the issues in controversy, and the claimants are benefited by having it set forth in detail.
In the second branch of their third plea the defendants aver that Morse was not the original andfirstinventor of any material aDd substantial part of any of the guns which form the subject ■of controversy; that the things or combinations in said guns which are described in theletterspatent setforth in the petition, and claimed by Morse as new, were, before his supposed invention, known to others and patented and described in some printed publication by others; and they give notice that on the trial they will prove that the matters and things claimed as •new in said patents which are embodied in any of the said guns were known to and patented to sundry persons, whose names •are set forth in the plea, and were described in sundry printed publications therein named. This branch of the plea appears to be intended as a substantial compliance with the provisions •of section 4920 of the Eevised Statutes, respecting notices in .actions of infringement.
At the December term, 1878, the defendants filed a plea giving a notice identical in all respects with this, as to the persons .and publications, but averring that Morse was not the original and first inventor of any material or substantial part of the thing or things patented in the letters patent, and that the matters and things claimed as new in the patents were known to such persons and described in such publications. That plea was stricken out on motion.
As additional reason why the third plea should be stricken •out the claimants contend: 1st. That there is no difference between the second branch of this plea and the plea which was ¡stricken out in 1878, and that therefore it is res judicata,; 2d. That a patent cannot be collaterally annulled, nor in any case except in case of interference; 3d. That the United States being the grantors of the patent it is not open to officers'of the government to question its effect to the extent of the grant; 4th. That a licensee cannot deny the patent of a licensor.
As to the first of these points it is sufficient to say that an* interlocutory judgment relating to the forms of proceedings, *303 and not going to tbe merits, is within the control of the court until final judgment. (Thomas's Case, 15 C. Cls. R., 352.) It is therefore immaterial whether the court did or did not err in finding that some allegations in the plea of December, 1878, «differ substantially from those in the present plea. For, in any <event, if the court is of opinion that the plea in its present form .and connection is admissible, it is our duty not to strike it out.
As to the second contention it is undoubtedly true that, except in certain specified cases, no one but the government can institute proceedings for vacating a patent. But the defendants are not seeking a technical vacating of a patent (to use Mr. Justice Miller’s word in Mowry & Whiting, 14 Wall., 429), or an abrogation of it (to use Mr. Justice Swayne’s word in Rubber Co. v. Goodyear, 9 Wall., 797). They are only attempting a defense which is set up every day in other courts in suits for infringement of patents.
As to the third point, without entering upon a general inquiry .as to the effect of acts of its officers upon the rights of the government, it is enough to say that the statutes which allow individuals to question the validity of a patent do not shut out the government from the same right. The government’s rights are •certainly as broad as those of the citizen.
The last contention involves the real issue between the parties — whether such a. defense can be set up in an action sounding in contract? And, if set up, whether it deprives the court of jurisdiction ? The alleged contract relied on is set' out in the complaint in the following language:
a# * * Xt -was expressly agreed on the part of said Morse ■that if the result [of certain experiments] was satisfactory, the defendants might use the said inventions in the manufacture and alteration of said arms, paying for such use such sums as. the same should reasonably be worth; and on the part of the •defendant, through the. Secretary of War, that in the event of said use such remuneration should be made to said Morse. * * * The defendants finally and formally made exclusive .adoption of the invention of said Morse, * as contemplated by the original agreement between the defendants and the said Morse, and * thereby became bound to pay for its use of said inventions such sums or royalties as the same are reasonably worth.”
The original agreement with the Secretary of War is alleged to have be en made in 1858, and the final and formal adoption of the invention in 1873.
*304 Tbe sixth section of tbe act of May 1,1820, wbieb was in force when tbe alleged agreement was said to have been made with tbe Secretary of War, enacted that, except contracts for subsistence and clothing of tbe Army and contracts for tbe Quartermaster’s Department, no contract should be made by tbe Secretary of War except under a law authorizing tbe same, or under an appropriation adequate to its fulfillment. (3 Stat. L., 568.) Tbe fourth section of tbe act of May 4, 1858, which was also in force at that time, required tbe Secretary of War to report all tbe excepted classes of contracts to Congress, and to make no more such contracts except in cases of pressing exigency. (11 Stat. L., 269.) Tbe second section of tbe same act of May 1, 1820, contemplated that balances of appropriations remaining unexpended more than two years should be reported by tbe Secretary of War to tbe Secretary of tbe Treasury, and by tbe latter be carried to tbe account of tbe surplus fund. (3 Stat. L., 568.)
It is not necessary for us on this motion to consider whether tbe Secretary could by contract bind tbe government for an indefinite term of years, because tbe claimants’ counsel maintains that bis pleadings entitle him to contend, and asserts that when tbe proper times comes be shall contend, that tbe claimants may recover wb at they claim under an implied contract of license. Nor is it necessary for us, in tbe present stage, to decide whether tbe allegations in tbe complaint will let in tbe claimants to prove an implied contract, because our liberal rules will enable us eventually to conform tbe pleadings to tbe merits of tbe case if tbe claimants show a substantial right of recovery.
Assuming that tbe claimants may, under their pleadings, es-, tablisb either a valid express contract or an implied contract, i we have to determine whether, in each of those cases, it is com- j petent for tbe defendants to set up that tbe patent under which they claim is invalid by reason of want of novelty.
Hayne v. Maltby (3 T. R., 438) is one of tbe earliest adjudicated cases in point. Tbe assignee of a patent licensed tbe defendant to use tbe patented machine, and tbe licensee covenanted to use no other patented machine during tbe term. To an action for breach of covenant tbe defendant pleaded that tbe invention was not new and was not invented by tbe patentee. Counsel argued that be was estopped from this defense; but tbe court held otherwise. Lord Kenyon said: “It is said *305 that though conscience fails, the defendant is estopped in point of law from, saying that the plaintiff had no privilege to confer. But the doctrine of estoppel is not applicable here. Who is estopped? The person supposed to be estopped is the very person who has been cheated and imposed upon.”
In Taylor v. Hare (1 Bos. & P. N. R., 260; Webster’s Patent Cases, p. 292), it appeared that the defendant received a patent for an invention and licensed the plaintiff to use it. The plaintiff used it for years and paid the current royalty. It was then determined that the patent was void for want of novelty. The plaintiff sued to recover back the royalties which he had paid. But the court held that it could not be done. Sir James Mansfield, C. J., said: “These persons maybe considered in some measure as parties in the benefit of this invention. ” Mr. Justice Heath said: “It might as well be said, if a man lease land, and the lessee pay rent and afterwards be evicted, that he shall recover back the rent though he has taken the fruits of the land.”
Bowman v. Taylor (2 Ad. & El., 278) was an action of covenant brought by a patentee to recover royalties which a licensee had covenanted by deed to pay. The defendant pleaded that the patented invention was not new, and that the patentee was not the first and true inventor; but the court held that the defendant was estopped by his deed from setting up that defense. Lord Denman said: “The defendant states what he is estopped from alleging, because it contradicts the recital in his own deed. The case of Hayne v. Maltby has been sufficiently distinguished from that before us, and Mr. Justice Patterson said: “ In Hayne v. Maltby the recital contained no assertion of right in the plaintiffs except as assignees, and the plea did not deny that. The case was not properly one of estoppel.”
Nelson et al. v. Fothergill et al. (Webster’s Patent Cases, p. 287) was in equity. The plaintiffs were patentees of an improvement in smelting iron. The defendants were licensees under a revocable license, which was in fact revoked for non-payment of rent. The remedy sought was an injunction restraining the use of the improvement. The defendants denied the novelty of the invention, and that the plaintiffs were the inventors. Lord •Cottenham required rent in arrear on the revocation to be paid, and accepted the defendant’s security to account for after accruing rent, saying, “The case of Hayne v. Maltby appears to me *306 to come to this: that although a party has dealt with the pat-entee and has carried on business, yet that he may stop, and then the party who claims to be the patentee cannot recover without giving the other party the opportunity of disputing his right, and if the defendant successfully dispute his right, that notwithstanding he has been dealing under a contract it is-competent to the defendant to do so.”
Chanter v. Leese was elaborately argued and is fully reported. The plaintiff as patentee by parol agreement licensed the defendant to use, manufacture, and sell the improvement in a specified district during the continuance of the letters patent. The defendant agreed to pay a specified royalty therefor. To an action of assumptsit to recover the royalty the defendant pleaded that the patented improvement was not a new invention at the time of granting the patent. To this the plaintiff* demurred. The court below, by Lord Abinger, said (4 M. & W., 310): “We think the judgment ought to be for the defendant on the demurrer. The declaration is founded on the contract, and nothing but the contract. If a man contract to pay a sum of money, in consideration that another has contracted to do certain things on his part, and it should turn out before anything is done under it that the latter was incapable of .doing what he engaged to do, the contract is at an end.” The case was appealed from the court of exchequer pleas to the exchequer chamber, where the judgment was delivered by Tin-dal, O. J. (5 M. & W., 698). He says: “ Upon the demurrer two questions arose: First, whether it was. necessary for the plaintiff to aver that the defendants had enjoyed the use of the patent under the agreement; and, secondly, whether the plea, showing that one of the patents was void, was a sufficient answer to the action. We do not think it necessary to determine the first question, inasmuch as we are of opinion in favor of the defendants upon the second. There is no assignment of the patents by deed in this case; no interest in them passed to the defendants, but the whole matter rests in contract. The defendant .is not in a situation with respect to the plaintiff similar to that of a tenant towards his landlord', and is in no way estopped from showing any failure of the consideration for his promise to pay the annuity to the plaintiff, which may be sufficient to-bar the plaintiff of his action.
In Lawes v. Purser et al. (38 Eng. Law & Eq. R., 48), the *307 plaintiffs were owners of a patent. The defendants, as their licensees, used the patented article. The action was to recover an agreed royalty for a use of the patented article which had been enjoyed. The defendants pleaded that the patent was void and of no effect, and that they had a right to use the alleged invention without the plaintiff’s license or permission. Lord Campbell said: “There is no fraud alleged, and no revocation of the license; but on the contrary it is acknowledged that the defendant used the patent under the permission of the plaintiff. The plea is contrary to principle.” Mr. Justice Coleridge said: “My doubt has been upon the true construction of the declaration and plea; whether upon the whole it appeared to be an executed contract. Upon further consideration I think the proper construction is that it is an executed contract, and, if so, that the plea is no answer.” Mr. Justice Wightman said: “The case of Taylor v. Hare does very much apply to this. The facts are very nearly the same, and the observations of Sir J. Mansfield in giving judgment bear strongly on the case.” Mr. Justice Brie said: “I am of the same opinion. The defendants are bound by their promise, they having had the consideration for that promise.”
Wilder v. Adams et al. (2 Wood. & Min., 329) was an action of covenant by a patentee against a licensee to recover a royalty. The defendant set up the invalidity of the patent as a defense. Mr. Justice Woodbury said: “ The argument seems to be that the invalidity of the patent, if shown, would constitute a failure of the consideration on which the covenant to account and pay rested, and hence would be a good bar to recovery. But I doubt the soundness of this reasoning in the present form of action, and as applied to a covenant like that upon which it is founded. Were this suit assumpsit on a parol promise to pay a certain sum for the assignment of a valid patent for a certain machine, and the plaintiff counted, as he must, on an assignment of such a patent as the consideration of the promise, probably he might be obliged to prove that the patent was a valid one, and its validity might be impeached in defense to the claim of. the plaintiff. (Holden v. Curtis, 2 N. H., 64, 65.) But here the plaintiff sues in covenant on a sealed instrument, and a good consideration is implied from the solemn form of the promise in writing and under seal.” •
Certain general principles which may be deduced from these *308 cases have a wide support both, from American and English authorities.
1. The taking of a naked license or permission to work under a patent does not, without some recitals or admissions amounting to an admission, estop the licensee from denying the validity of the patent, or the fact of infringement, if he is subsequently proceeded against. (Curtis on Patents, § 215.)
2. If the licensee takes title by deed, and the deed contain recitals or statements amounting to admissions of the validity of the patent, and agreements on the part of the licensee to pay a stipulated rent or royalty, he is estopped by a technical estoppel from setting up the invalidity of the patent as a defense to covenant for the rent. Whether the sovereign would be estopped by such an estoppel need not now be considered.
3. If the licensee takes title by parol agreement, and agrees to pay a stipulated rent he cannot set up the invalidity of the patent against a claim for rent so long as he holds and occupies under his license. Therefore such defense is not available against a claim under parol agreement for past rents which have become due for a use of the patent with knowledge in the licensee that the licensor regarded the use as had under the license, and with no notice to the contrary by the licensee, or no act by him hostile to the license. (Curtis, §§ 215, 216, 217; Jones v. Burnham, 67 Me. R., 93; Marsh v. Dodge, N. Y. Sup., 6 Thomp. & Cook, 568; Sherman v. Champlain Trans. Co., 31 Vt. R., 174; Noton v. Brooks, 7 Hurl. & N., 499; Kinsman v. Parkhurst, 18 How., 280.)
4. But if a licensee under a parol agreement abandons the benefits under the license, either by direct notice, or by an equivalent act showing a purpose of discontinuing use of the improvement under it, the invalidity of the patent for want of novelty will 'be a valid defense against an action for subsequently accruing rents during the unexpired term. (Harlow v. Putnam, 124 Mass., 553; also Jones v. Burnham and Marsh v. Dodge, ubi sup.)
. 5. If the amount of the rent of a license is not stipulated and ■.agreed and it depends upon such reasonable worth of the use as may be proved, proof of the invalidity of the patent is admissable to show failure of consideration, either partial or entire. (Gray, C. J., in Jackson v. Allen, 120 Mass., 80.) We received *309 similar evidence for such, purpose in McKeever's Case (14 C. Cls. R., 396).
Applying these principles to this case, the contract set forth in the complaint does not preclude the defendants from setting up that Morse was not the first inventor of the alleged improvements.
If the special contract is relied on, it is not alleged that it was entered into by deed; or that it was for a specific term; or that a fixed and stipulated rate of royalty was agreed to be paid; or that it was in fact anything but a naked license. It appears by the complaint and the admissions in the pleas that two specific licenses were made for agreed rates of royalty. These subsequent in date to the general contract which is alleged to have been made, and, being each at a different rate, lead to the strongest inference that the alleged prior contract, if it ever existed, had neither term nor rate. Under such pleadings we cannot shut out the defendants from proving that any use of the alleged improvements which may be proved subsequent to the special licenses was not made under a special contract, or that Morse was not their real inventor.
On the other hand, if the claimant relies on an implied contract, it is an elementary principle, settled by a long practice, that a mere use of a patented improvement does not imply a recognition of the validity of the patent. The validity of the patent, its novelty, and the truth of its invention by the patentee, are the first elements in testing the value of its use.
Thus, we answer in the affirmative the first inquiry, viz: Whether such a defense can be set up in an action sounding in contract? It only remains to answer the second question, viz: If this defense is set up, does it deprive the court of jurisdiction'?
Section 029 of the Revised Statutes confers upon circuit courts . of the United States jurisdiction of all suits at law or in equity arising under the patent laws of the United States; and section 711 provides that such jurisdiction shall be exclusive of the courts of the several States.
The exclusive jurisdiction thus conferred does not extend to the enforcement of contracts for royalties for the use of patents. (Marsh v. Dodge, 6 Thomp. & Cook, 568; Elmer v. Pennel, 40 Me., 430; Sherman v. Champlain Trans. Co., 31 Vt., 174.) In the language of a recent decision by the Supreme Court, “An *310 action which raises a question of infringement is a question which arises‘under the law.’ * * * Such a suit may involve the construction of a contract as well as the patent, but that will not oust the [circuit] court of its jurisdiction. If thé patent is involved, it carries with it the whole case.” (Littlefield v. Perry, 21 Wall., 322.) If a licensee fails to perform his agreement to pay his royalty, the violation is not a violation of the patentee’s rights, which are secured by United States law, but only of such of his rights as are secured by the licensee’s covenant; and a suit to enforce the latter rights is, not a suit under a law of Gongress. (Goodyear v. Rubber Co., 4 Blatch. C. C. R., 66.)
If a State has jurisdiction of the parties it may take jurisdiction of this subject-matter; and the jurisdiction once taken will not necessarily be defeated because a question arises incidentally by way of defense in regard to the validity of the patent. (Sherman v. Champlain Trans. Co., 31 Vt., 174; Jackson v. Allen, 120 Mass., 80; Harlow v. Putnam, 124 Mass., 553; but see Elmer v. Pennel, 40 Me., 430, and Parsons v. Barnard, 7 John., 144.)
But where ,the United States uses a patented invention the suit to recover for the use must be brought in this court, because here only does the sovereign consent to be sued; and it must be founded on contract, because the sovereign does not permit itself to be bound by the tortious acts of its officers. If our jurisdiction over such suits was ever questioned, it is now well settled. (Burns' Case, 4 C. Cls. R., 113; 7 ib., 113; 12 Wall., 246; McKeever's Case, 14 C. Cls. R., 396.) The commencement of a suit here for the recovery of money for the use of a patented invention, under a contract either express or implied, puts the subject-matter within our jurisdiction, unless it appears on the face of the complaint, or is admitted by the pleadings, that the cause of action accrued more than six years before the commencement of the action.
A plea that the alleged patent is no patent, that it is void for want of novelty, that the alleged inventor of the improvement was not the real inventor, does not take away the jurisdiction when once acquired. Taken by itself, it goes to the question of damages, showing either an entire failure of consideration, or, as in McKeever’s Case, a partial failure. It does not imply that the use of the alleged improvement was tortious or inconsistent with the idea of a contract. For it might well be that the use was had under orders of responsible officers, issued in the dis *311 ■charge of their ordinary duties, with no purpose of infringing upon the rights of a patentee, but doiibtful to whom payment •should be made, if any were justly due.
It is, therefore, the duty of the court to retain jurisdiction of such cases, even if it involves determining the validity of a patent. The statutory reasons which may possibly debar a State •court from proceeding in a similar case are not in force here. The court must determine on the particular facts in each case whether the claimant has a contract with the United States, or whether the use of the patent was tortious, hostile, or otherwise inconsistent with the implication of a contract. For, as was forcibly said by the Supreme Court in a recent case,u while Congress might be willing to subject the government to the judicial enforcement of valid contracts, which could only be valid as against the United States when made by some officer of the government, acting under lawful authority, with power vested in him to make such contracts or do acts which implied them, the ' very essence of a tort is that it is an unlawful act, done in violation of the legal rights of some one. For such acts, however high the position of the officer or agent of the government who did or commanded them, Congress did not intend to subject the government to the results of a suit.” (Langford v. The United States, 101 U. S. R., 341.)
For these reasons the court denies the claimants’ motion for a rehearing, and, letting the defendants’ second and third pleas stand, takes jurisdiction to hear and determine on such proofs as may hereafter be brought before it, Whether the claimants establish a contract with the defendants) or any injury resulting from a breach of it.
Let the motion be denied.